IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                         Case No. 4:19-cr-40002-SOH

CARLOS BARAHONA-BERMUDEZ                                                    DEFENDANT

## ORDER

Before the Court is a Motion to Suppress filed by Defendant Carlos Barahona-Bermudez. ECF No. 26. The government has filed a response. ECF No. 29. On April 23, 2019, the Court held a hearing on the motion. The Court finds that the matter is ripe for consideration.

### I. BACKGROUND

On December 10, 2018, Hempstead County Sheriff's Deputy Reyn Brown observed a Ford Explorer swerve toward and then straddle the dividing line between two eastbound lanes of Interstate 30. Deputy Brown initiated a traffic stop for a lane violation (driving left of center). Deputy Brown observed the driver, David Chavez, a front passenger, J. Mejia, and eight more individuals in the back of the vehicle. Defendant Carlos Barahona-Bermudez ("Barahona") was a passenger in one of the rear seats. Mejia told the officer that the individuals in the back of the vehicle were family members from Houston on their way to visit family in Virginia.

Deputy Brown asked for consent to search the vehicle, and Chavez consented. Deputy Brown asked everyone to exit the vehicle, and he began his search. Deputy Brown located a clear baggie of white powder residue in a door pocket near the front passenger, which he suspects is cocaine, and a similar baggie in the console. Deputy Brown was not able to obtain identification or

a driver's license from any of the individuals in the vehicle, including the driver. Mejia told Deputy Brown that they did not speak English.

Deputy Brown placed the driver, Chavez, under arrest on state charges and made arrangements for the vehicle to be impounded. Deputy Brown called a taxi service to pick up the nine passengers from the side of the Interstate. Deputy Brown left the scene with Chavez. During transport, Chavez told Deputy Brown that Mejia had placed more drugs behind the glove box of the vehicle. Deputy Brown located the vehicle, which was now being towed, near the scene of the initial traffic stop and found the drugs stashed behind the glove box. Chavez then told Deputy Brown that Chavez and the passengers were involved in a smuggling ring and that he had agreed to transport the passengers to Atlanta, Virginia, and New Orleans. He stated that he picked up the vehicle full of passengers in Houston and that all of them were undocumented immigrants from Mexico.

The passengers were still on the side of the Interstate when Deputy Brown returned. Mejia told Deputy Brown that the passengers intended to leave the side of the Interstate and walk to a nearby gas station. Deputy Brown informed the group that they could not leave because they were under further investigation. Deputy Brown called off the taxi and requested a transport bus for the nine passengers, who were loaded into the bus for transport to the Hempstead County Detention Center. Homeland Security Investigations (HSI) was contacted and it transported eight passengers[1] from the detention center to the HSI office in Texarkana, Arkansas.

An HSI agent interviewed the eight passengers for biographical information, and they were fingerprinted. Barahona was asked to provide his name, date of birth, and country of origin. He was also asked if he had any United States-issued identification documents or proof of lawful

---

[1] It was determined that Mejia, the front passenger, was a 17-year-old minor, and he was transported to Child Protective Services.

admission. Barahona replied that he did not and provided a Salvadoran identity card. Barahona's fingerprints were scanned into the IDENT/IAFIS database and matched to that of a subject with an immigration file under the name of Carlos Barahona-Bermuda. He was served with a Notice of Intent to Reinstate Prior Order of Removal based on records that revealed he had been previously deported from the United States. Barahona was arrested on December 10, 2018, and subsequently indicted for illegal re-entry by a removed alien in violation of 8 U.S.C. § 1326(a). ECF No. 16.

## II. DISCUSSION

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. In the instant motion, Barahona argues that his Fourth Amendment rights were violated because Deputy Brown did not have probable cause to stop the vehicle in which Barahona was a passenger and because Deputy Brown arrested him without probable cause. Barahona asserts that all evidence obtained by virtue of the unlawful traffic stop and arrest must be suppressed.[2] Further, Barahona argues any statements he made were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and must be suppressed.

### A. Traffic Stop

Barahona alleges that Deputy Brown's traffic stop violated his Fourth Amendment rights because Deputy Brown lacked probable cause to stop the Ford Explorer in which Barahona was a passenger. Barahona argues that Chavez, the driver of the vehicle, did not commit a traffic violation before he was pulled over. The government argues that Deputy Brown had probable cause and/or

---

[2] Barahona asserts that this evidence includes his fingerprints, an A-file connected to him with those fingerprints, a new booking photo, and all other information gathered from him while in the custody of either the Hempstead County Sheriff's Office or Homeland Security.

reasonable suspicion to initiate the traffic stop because he observed Chavez driving "left of center" on the Interstate.

A traffic stop constitutes a seizure under the Fourth Amendment, and thus it must be reasonable to pass constitutional muster. *United States v. Wright*, 512 F.3d 466, 469 (8th Cir. 2008). "[A] traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). "Any traffic violation, however minor, provides probable cause for a traffic stop." *Id.* (quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994)). "Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an 'objectively reasonable one.'" *United States. v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2010) (quoting *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (noting that the determinative question is not whether the driver actually committed a traffic violation but whether an objectively reasonable officer could have formed a reasonable suspicion that the driver committed a traffic violation)).

In the present case, Deputy Brown initiated the traffic stop for a violation of Ark. Code Ann. § 27-51-301, which the government contends prohibits driving "left of center." The statute states that a vehicle shall not be driven upon the left half of the roadway; however, the statute defines six exceptions to this rule. Ark. Code Ann. § 27-51-301. One of these exceptions is when the roadway is "designated and signposted for one-way traffic." *Id*. Barahonas asserts that when the vehicle was pulled over, it was traveling on a portion of the Interstate that was designated as one way, and thus the statute was not applicable. He further argues that the statute does not apply because the vehicle was not being operated in the left lane of the divided highway.

The Court finds it unnecessary to determine whether the statute applies to vehicles driving on divided highways or interstates in order to find whether Deputy Brown had probable cause to stop the vehicle. Regardless of whether crossing the center line between two eastbound lanes of an interstate is a violation of the statute, Deputy Brown was justified in making the stop if he objectively had a reasonable basis for believing that the driver had committed a traffic violation. *See Herrera-Gonzalaz*, 474 F.3d at 1109. Deputy Brown testified that Chavez was driving carelessly. Deputy Brown further testified that he observed the vehicle swerve towards the center line and then cross the center line into the left lane without attempting to move fully into the left lane. Even if Chavez had not technically violated Ark. Code Ann. § 27-51-301, Deputy Brown could have reasonably believed that he committed a traffic violation by driving carelessly and swerving into the left lane. "While officers have an obligation to understand the law, [the Court] should not expect them to 'interpret the traffic laws with the subtlety and expertise of a criminal defense attorney.'" *Id*. (quoting *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)). Accordingly, the Court concludes that the traffic stop was reasonable and lawful.

B. **Seizure**

Barahona next argues that he was arrested without probable cause when he was held on the side of the road and placed into the back of a police van for transport to the police station. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *United States v. Rowe*, 878 F.3d 623, 629-30 (8th Cir. 2017) (citing *Ulrich v. Pope Cnty*., 715 F.3d 1054, 1059 (8th Cir. 2013)). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that [a] defendant has committed or is committing an offense." *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007). Chavez told Deputy Brown that he was involved in a smuggling ring; that he had picked up

the passengers, including Barahona, in Houston; that he had been paid to transport them to Atlanta, Virginia, and New Orleans; and that all of the passengers came from Mexico illegally. Deputy Brown found drugs stashed in the vehicle. Mejia told the officer that none of the passengers spoke English, and none of the passengers were able to produce identification. Given these circumstances, a reasonably cautious officer would believe that it was probable that Barahona had unlawfully entered the country and was part of the smuggling ring. Accordingly, the Court finds that there was probable cause to arrest Barahona or place him in custody.

C. **Pre-Miranda Statements**

Barahona argues that the government obtained a statement from him without first advising him of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). Barahona asserts that because his Fifth Amendment right was violated, any statement he made must be suppressed. The government argues that *Miranda* does not apply to biographical data.

"*Miranda* prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of the Fifth Amendment privilege against self-incrimination and right to an attorney." *U.S. v. Chipps*, 410 F.3d 438 (8th Cir. 2005) (quote omitted). *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994).

Once Barahona was transferred to the HSI office in Texarkana, he was asked to provide his name, date of birth, and country of origin. He was also asked if he had any United States-issued identification documents or proof of lawful admission to which he responded that he did not. He produced a Salvadoran identity card. "A request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be

6

incriminating." *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) (quoting *United States v. McLaughlin*, 777 F.2d 388, 391-92 (8th Cir. 1985)). Further, asking a routine booking question is not interrogation under *Miranda*. *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010). In this case, the questions asked by the HSI agent were routine booking questions and/or requests for basic identification information and thus were not subject to *Miranda*. *See United States v. Garcia-Zavala*, 919 F.3d 108, 113 (1st Cir. 2019) (The defendant's "statements identifying himself, his date of birth, and his country of origin are not subject to *Miranda*."). Accordingly, the Court concludes that there was no Fifth Amendment violation.

### III. CONCLUSION

For the reasons stated above, the Court finds that Barahona's Motion to Suppress (ECF No. 26) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 3rd day of June, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge